**SIGNED THIS: February 05, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TIMOTHY GEORGE FRANK and ) | No. 05-86731 |
| TAMMY LYNN FRANK, ) | |
| ) | |
| Debtors. ) | |

**O P I N I O N**

In this Chapter 13 case, the Debtors, Timothy and Tammy Frank (DEBTORS) are moving for disgorgement of the $2,000.00 in attorney fees paid to their attorneys, Ostling and Associates (the "Ostling Firm"). An evidentiary hearing was held on January 7, 2008, at which Tammy Frank testified. For the following reasons, partial disgorgement will be ordered.

**FINDINGS OF FACT**

1. The DEBTORS own and reside at the residential real estate commonly known as 203 S. Maple St., El Paso, Woodford County, Illinois (the "Real Estate"), which they owned and resided at prior to the commencement of this bankruptcy case.

2.  In June 2004, the DEBTORS granted a mortgage on the Real Estate to Mortgage Electronic Registration System, Inc. (MERS) to secure a note in the amount of $102,500.00, without an escrow for real estate taxes which the DEBTORS were responsible for paying.

3.  In 2005, the DEBTORS fell behind on their mortgage payments. MERS commenced foreclosure on October 4, 2005.

4.  The DEBTORS also failed to pay the 2004 real estate taxes, payable in 2005, when they came due.

5.  The DEBTORS hired the Ostling firm to file a bankruptcy case for them with the intent and purpose of saving their home.

6.  On October 14, 2005, the Ostling firm filed a petition under Chapter 13 for the DEBTORS.[1] No schedules or other papers were filed at that time, except for the creditor matrix, which was filed, but which did not include the Woodford County Treasurer or any other public official in Woodford County.

7.  On November 7, 2005, the Ostling firm filed the Chapter 13 Plan, the schedules and other required papers.

8.  In Chapter 13 cases, the notice of the case filing, which includes an objection period for creditors to object to confirmation of the plan, cannot be mailed to creditors until the plan is filed. The notice of the case filing and of applicable deadlines was mailed to all creditors listed on the creditor matrix on November 10, 2005, by the Bankruptcy Noticing Center.

9.  Schedule A declares the value of the Real Estate to be $110,000.00 subject to a mortgage in the amount of $102,148.00.

10. Schedule D lists the mortgage debt as a secured debt, but does not list any debt for real estate taxes.

11. Instead, Schedule E, listing creditors holding unsecured priority claims, identifies the creditor as "Woodford County Taxes," describes the consideration for the claim as "Property Tax," but fails to identify the tax year at issue, and lists the amount of the claim as $2,700.00.

---

[1] October 16, 2005, was the last day to file under pre-BAPCPA bankruptcy law. A large number of cases were filed that day and in the preceding days, many by petition only, with no schedules. According to the motion for extension of time to file schedules and plan, filed in this case, the Ostling firm boasts that it filed 1,362 cases within the eight days preceding October 17, 2005.

2

12. The Disclosure of Compensation and the Application for Attorney's Compensation, filed by the Ostling firm on November 7, 2005, disclose that the DEBTORS agreed to pay $2,000 to the Ostling firm, $500 of which was paid prepetition. The fees were approved by Order entered November 8, 2005.

13. The Chapter 13 Plan, prepared by the Ostling firm, provides for payment of a priority claim to "Woodford County" for "Property Taxes" in the amount of $2,815.21.

14. The Plan also proposed to pay a mortgage arrearage in the amount of $4,400.00, with the DEBTORS to make their regular postpetition mortgage payments outside the Plan.

15. The Plan proposed for the DEBTORS to pay $355.00 per month into the Plan for 60 months, with a partially secured car loan also paid through the Plan, estimating a 0% dividend to general unsecured creditors.

16. Neither the Plan nor Schedule E listed an address for "Woodford County" or any other identifying information about the holder of the claim for the 2004 real estate taxes. The Ostling firm never amended the creditor matrix to add a creditor for that claim.

17. Because no such creditor was included on or added to the creditor matrix, no notice of any kind was sent by the Bankruptcy Clerk to the Woodford County Treasurer or any other Woodford County official.

18. MERS objected to confirmation of the Plan alleging that the correct amount of the prepetition mortgage arrearage was $5,220.04.

19. On January 4, 2006, MERS moved for relief from the automatic stay to foreclose its mortgage on the Real Estate, alleging that the DEBTORS failed to pay the postpetition mortgage payments for November and December, 2005, and January, 2006.

20. Mrs. Frank testified at the hearing that, at first, she and her husband did not understand that they were to pay the postpetition mortgage payments directly to the mortgagee. The postpetition payment default was cured by the DEBTORS by the end of February, 2006, and the lift stay motion was resolved by an agreed order.

21. On February 22, 2006, the Ostling firm prepared and filed for the DEBTORS an Amended Plan that increased the prepetition mortgage arrearage amount to $5,220.04. The Amended Plan was confirmed on March 10, 2006.

22. On April 4, 2006, the Ostling firm filed an Amended Schedule F and an Amended Creditor Matrix adding three previously unscheduled unsecured creditors. The Woodford County Treasurer was not among them.

23. Mr. Frank became disabled and ceased working as of October 2, 2006.

24. On October 31, 2006, the DEBTORS tendered payment in full, in cash, to the Woodford County Treasurer, for their 2005 real estate taxes, due and payable by October 31, 2006. The money was accepted. Shortly thereafter, however, the DEBTORS received a refund of that payment with a communication stating that the funds could not be accepted as the 2004 real estate taxes had previously been sold. Until receiving this communication, the DEBTORS were unaware that the 2004 taxes had been sold. The DEBTORS subsequently spent the refunded money, in part to make mortgage payments.

25. The Court takes judicial notice that the public records of the Woodford County Treasurer's Office reflect that the 2004 real estate taxes were sold on November 3, 2005, to Schneider Investments, that the 2005 taxes were sold on September 20, 2006, to Schneider Investments, and that the taxes for those years were redeemed from the tax buyer on December 4, 2006, for $6,407.01.

26. In November, 2006, the DEBTORS called the Ostling firm and advised a paralegal that the 2004 and 2005 real estate taxes had been sold.

27. On or about December 29, 2006, the DEBTORS met with an associate attorney of the Ostling firm, although the attorney of record was Lars Eric Ostling.[2] The DEBTORS advised the attorney that their 2004 and 2005 real estate taxes had been sold to a tax purchaser and subsequently redeemed by MERS. They also advised him that they had received a notice from MERS that it was imposing a mandatory tax escrow obligation on their mortgage account requiring them to pay an additional $403.00 per month.

28. In addition to the tax escrow, due to an interest rate increase, the DEBTORS' mortgage payments increased from $815.00 to $1,114.00 per month effective February 1, 2007.

29. On March 2, 2007, the DEBTORS met with Lars Eric Ostling at his office. The DEBTORS blamed Mr. Ostling for the real estate tax problem, the meeting proceeded badly and ended with Mr. Ostling yelling at the DEBTORS.

---

[2] Lars Eric Ostling signed and/or filed the petition, the statement of financial affairs, the schedules, the disclosure of compensation, the application for compensation and the Chapter 13 Plan.

30. On March 15, 2007, the DEBTORS filed an ARDC complaint against the Ostling firm.

31. On April 24, 2007, MERS filed a Notice of Modification of the Automatic Stay pursuant to the Agreed Order entered February 28, 2006. Attached to the Notice of Modification is a Notice of Default alleging a default of $2,996.27 through April, 2007.

32. On May 16, 2007, the Ostling firm filed a Motion to Withdraw as counsel for the DEBTORS. The Motion was subsequently granted.

33. On May 29, 2007, the DEBTORS moved for a refund of the attorney fees paid to the Ostling firm.

34. The Court takes judicial notice that the public records of the Woodford County Circuit Clerk's Office in Case No. 05 CH 52 reflect that the Plaintiff, MERS, filed a Motion for Judgment of Foreclosure on June 20, 2007, that a Judgment of Foreclosure was entered on June 26, 2007, and that no further pleadings were filed as of January 15, 2008.

35. As of the hearing on January 7, 2008, the DEBTORS were still residing in the Real Estate despite the foreclosure action.

**OSTLING FIRM ARGUMENTS**

The Ostling firm argues that the DEBTORS suffered a decrease in income due to the disability of Mr. Frank and an increase in the interest rate on the mortgage, so that they could not afford the new mortgage payment as of February 1, 2007, regardless of the imposition of a tax escrow. The Ostling firm blames the DEBTORS for not keeping the money refunded by the Woodford County Treasurer. The Ostling firm also states that the DEBTORS should have known that the 2004 real estate taxes were not being paid by the Trustee when they received reports of disbursement from him.

**DISCUSSION**

The DEBTORS' troubles seemingly began when the 2004 real estate taxes, provided for in the confirmed Amended Plan, were not paid by the Trustee. Their troubles had

5

earlier roots, however, when the Woodford County Treasurer failed to receive notice of the bankruptcy filing. These troubles were caused by a series of errors committed by the Ostling firm.

The first error is the failure to cause the Woodford County Treasurer to be included by name and address on the creditor matrix. The creditor matrix is one of the most important documents that a debtor in bankruptcy must file. It supplies the information that the Bankruptcy Clerk's office uses for noticing purposes. If a creditor isn't on the creditor matrix, that creditor won't receive any notices from the Court. Attorneys who represent debtors in bankruptcy are charged with understanding the purpose and significance of the creditor matrix.

In this case, the Ostling firm failed to include the Woodford County Treasurer on the creditor matrix originally filed on October 14, 2005, and failed to subsequently amend the creditor matrix to add that creditor.[3] Schedule E filed by the Ostling firm incorrectly identifies "Woodford County Taxes" as a creditor holding a priority claim. Real estate tax claims are secured claims by statute and should be listed on Schedule D, not Schedule E. The scheduling designation error was minor, however, compared to the failure to list the Treasurer on the creditor matrix. Because the Treasurer was not on the creditor matrix, she never got notice of the bankruptcy filing, and she never received a proof of claim form or notice of the claim bar date or notice of the automatic stay.

---

[3] It is also acceptable to identify the tax obligee as the county "Collector," however, the treasurer of each county in Illinois serves as the county's tax collector. 35 ILCS 200/19-35. The County Treasurer is properly identified as the creditor to whom real estate taxes are owed. The creditor matrix should have included the following listing:

>     Woodford County Treasurer
>     Woodford County Courthouse
>     115 N. Main St.
>     Eureka, IL 61530

6

The sale of the taxes violated the stay against the enforcement of any lien against property of the estate under Section 362(a)(4) and the stay against any act to collect a claim against the debtor that arose before bankruptcy under Section 362(a)(6). Where a debtor is represented by counsel, it is the attorney's responsibility to make sure that the creditor matrix includes the name and address of each creditor that holds a prepetition claim.[4] Proper notice usually eliminates inadvertent stay violations. The Ostling firm failed to accomplish this basic responsibility.

The second error committed by the Ostling firm was its failure to file a proof of claim on behalf of the Woodford County Treasurer. Although creditors generally file their own claims, the debtor has the option to file a claim for a creditor that fails to file one. Fed. R. Bankr. Pro. 3004. It is well established in this district that Chapter 13 trustees will not make a distribution to a secured creditor until and unless a claim is on file. This Court has previously held that a trustee may properly refrain from making payment to a secured creditor until a claim is filed. *In re Mehl,* 2005 WL 2806676 (Bankr.C.D.Ill. 2005). In this Court's Standing Order Regarding Attorney Fees for Debtor's Counsel in Chapter 7 and 13 Cases, the duties of the debtor's attorney in a Chapter 13 case are defined to include a duty to "file proofs of claims for creditors who fail to file claims, if it is in the debtor's best interest to file such a claim." It is in the debtor's interest to have all secured and priority claims provided for in a plan paid by the trustee. Conscientious debtors' lawyers will check the claim register, usually at or around the claim bar date, to make sure a claim is on

---

[4] Mrs. Frank testified that she told the Ostling firm about the nonpayment of the 2004 real estate taxes before the bankruptcy filing. Although she may not have known the correct identity or address for the claimholder, real estate tax claims are common and it is the responsibility of the attorney to look up the address for the County Treasurer.

file for all secured and priority claims. If not, the attorney should file a claim on the creditor's behalf.

The Ostling firm breached this duty. Had the firm checked the claim register and seen that the Woodford County Treasurer did not have a claim on file, perhaps it would have raised a red flag sufficient to have caused the firm to question and investigate whether the Woodford County Treasurer even got notice of the case. Beyond that, filing a claim for the Woodford County Treasurer would have caused the Trustee to make payments to her. When she received the checks, without any forewarning that the property owners were in Chapter 13, the Woodford County Treasurer would then have had actual notice of the filing and could have applied for a declaration of a sale in error as to the sale of the 2004 taxes.[5] Once a sale in error is declared, the sale is nullified and the funds paid by the tax purchaser are refunded. 35 ILCS 200/21-310(d). Thus, the tax sale could have been reversed had the Ostling firm fulfilled its duty to file a proof of claim for the Woodford County Treasurer. Had a sale in error been declared, the 2004 taxes could have been paid through the confirmed Amended Plan as provided for therein.

It is difficult to understand how the Ostling firm could have been so cavalier about the claim for unpaid real estate taxes. Not only does the nonpayment give rise to a lien that primes existing liens, it constitutes a serious default on the mortgage, a default that is exacerbated by the sale of the taxes to a tax buyer. It is reasonable to expect that direct contact would have been made by the DEBTORS' attorney with the Woodford County Treasurer to preempt a pending tax sale. It is common knowledge that annual real estate

---

[5] Under Illinois law, one of the bases for determining a sale of real estate taxes to be a sale in error is that "prior to the tax sale a voluntary or involuntary petition has been filed by or against the legal or beneficial owner of the property requesting relief under the provisions of 11 U.S.C. Chapter 7, 11, 12, or 13." 35 ILCS 200/21-310(a)(6).

8

tax sales occur in the last quarter of each year. The DEBTORS' case was filed three weeks before the real estate taxes were sold. One phone call or letter by the Ostling firm advising the Woodford County Treasurer of the bankruptcy filing would have caused the Treasurer to remove the taxes from the November sale and would have given the Treasurer actual knowledge of the bankruptcy filing. In this Court's view, a real estate tax payment default is a special problem in a Chapter 13 case that merits special attention.[6]

The Ostling firm also failed to pursue an obvious course of remedial action once it was brought to the firm's attention, by the DEBTORS, that the taxes had been sold. Because the sale occurred postpetition, it was done in violation of the automatic stay. Actions taken in violation of the automatic stay are at least voidable if not void *ab initio*. *Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.,* 250 F.3d 1077, 1082 (7th Cir. 2001); *In re Myers,* 491 F.3d 120 (3rd Cir. 2007) (actions taken in violation of automatic say are void, but ratifiable by annulment of the stay). *See, also, Richard v. City of Chicago,* 80 B.R. 451 (N.D.Ill. 1987) (county's sale of overdue special assessment against debtor's real estate at tax sale in violation of automatic stay was void and without legal effect); *In re Greer,* 89 B.R. 757 (Bankr.S.D.Ill. 1988) (county's sale of delinquent real estate taxes done postpetition violated automatic stay and was void and without legal effect regardless of whether county and tax buyer had notice or knowledge of the existence of the stay).

Even if the Ostling firm did not have notice of the sale of the taxes until late 2006, MERS did not file its Notice of Modification of the Automatic Stay until April 24, 2007, and

---

[6] One of the main benefits to a debtor from the filing of a petition in bankruptcy is the injunctive protection provided by the automatic stay. A desire to stay critical actions by creditors, such as the entry of a judgment or a foreclosure sale, often drives the timing of the bankruptcy filing. Given the imminence of a tax sale, it is reasonable to expect the debtor's attorney to pay close attention to getting the petition filed before the sale occurs and to causing the county treasurer to be made aware of the filing as soon as possible to prevent a sale in violation of the stay.

9

did not take any additional action to prosecute the foreclosure until June 20, 2007. Thus, there was ample time to pursue a remedy in bankruptcy court. Had the Ostling firm done what it was required to do as counsel for the DEBTORS, the 2004 real estate taxes would have been paid through the plan, the 2005 real estate taxes would have been paid when due by the DEBTORS, and the mortgagee likely would not have pursued stay relief to continue the foreclosure action.

The Ostling firm asserts that the DEBTORS are to blame since they failed to notice in certain reports prepared by the Trustee that the tax claim was not being paid and because they spent the money refunded by the Treasurer for the 2005 taxes. These assertions are unavailing. The first assertion, that clients who fail to understand a report that could have alerted them to the attorney's error should suffer the consequences of the error, is absurd. As for the second assertion, while it may have been better had the DEBTORS held onto the 2005 tax money, those 2005 taxes would have been paid but for the Ostling firm's errors that lead to sale of the 2004 taxes. The Ostling firm also argues that the DEBTORS' plan was doomed anyway, once Mr. Frank became disabled. This assertion is speculation and is belied by the facts, since the DEBTORS are still successfully making their plan payments, more than a year after he stopped working.

A debtor's transactions with his attorney are regulated by Section 329 of the Bankruptcy Code. Under that section, a court may order the return of fees paid to the attorney, to the extent excessive, to the estate where the fees were paid under a Chapter 13 plan or to the debtor where paid outside the plan. 11 U.S.C. § 329(b)(1)(B). A bankruptcy court has broad power and discretion to deny attorney fees or to order disgorgement of

fees already paid. *In re Zepecki,* 277 F.3d 1041, 1045 (8th Cir. 2002). Disgorgement is appropriate where the services rendered were ineffective. *In re Vargas,* 257 B.R. 157, 166-67 (Bankr.D.N.J. 2001); *In re Bruzzese,* 214 B.R. 444, 450-51 (Bankr.E.D.N.Y. 1997).

The primary purpose of this Chapter 13 case was to save the DEBTORS' house, to be accomplished by paying the mortgage arrearage and delinquent real estate taxes through a plan. The efficacy of the plan was contingent, in part, upon notice of the case being provided to the Woodford County Treasurer and upon a proof of claim being filed for the 2004 real estate tax debt. It was the Ostling firm's responsibility to see that these contingencies were fulfilled. In that, they failed the DEBTORS, causing difficult problems that ultimately resulted in or substantially contributed to modification of the automatic stay and prosecution of the foreclosure action, problems that may yet lead to loss of the house.

The remedy of disgorgement is appropriate and necessary under the circumstances. Since the primary purpose of the filing was to save the DEBTORS' home, and that goal is now in serious jeopardy due to the Ostling firm's errors, the bulk of the fees should be disgorged. The Ostling firm shall refund the sum of $1,600.00 of the $2,000.00 it received as a fee in this case, by paying $500.00 to the DEBTORS and $1,100.00 to the Chapter 13 Trustee for the benefit of the estate. The Motion to Continue Evidentiary Hearing filed by the Ostling firm will be denied.[7]

---

[7] The Motion was filed at 11:50 a.m. on Friday, January 4, 2008, one business day in advance of the trial set for January 7, 2008 at 2:00 p.m., alleging that Mr. Ostling was unable to attend due to a "prior, out-of-state business commitment." The Motion is untimely and unsupportable. Further, the dispute between the DEBTORS and Mr. Ostling that occurred on March 2, 2007, was not material to the Court's decision.

11

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###